## L. MEDDERS v. THE STATE.

### No. 4083. Decided October 14, 1908.

**1.—Swindling—Indictment.**

See allegations in opinion in an indictment for swindling held to be sufficient.

**2.—Same—Money—Creditor and Debtor.**

Upon trial for swindling where the evidence showed that the money which the defendant claimed was not paid out to him in cash but placed to his credit in the bank, there was no merit in the contention that he had not received the money.

**3.—Same—Charge of Court—Principal.**

Upon trial for swindling where the evidence showed that the defendant acted together with another and represented himself as a party to the alleged false representation; and both were present during the transaction and knew the unlawful intent, the court correctly charged on the law of principals.

**4.—Same—Sufficiency of Evidence—Principals.**

See opinion for facts held to be sufficient that defendant and another acted together and participated in the false representation by which they illegally obtained money from the party injured.

Appeal from the District Court of Mason. Tried below before the Hon. Clarence Martin.

Appeal from a conviction of swindling; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Walker, Adkins & Walker*, for appellant.—May v. State, 15 Texas Crim. App., 430; Mathews v. State, 10 Texas Crim. App., 279; Childers v. State, 16 Texas Crim. App., 524; Marwilsky v. State, 9 Texas Crim. App., 377; Litman v. State, 9 Texas Crim. App., 461.

*F. J. McCord*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a companion case to Baxter v. State, reported in 51 Texas Crim. Rep., 576; 105 S. W. Rep., 195.

The indictment charges appellant with swindling in that he made false representations to certain officers of the German American National Bank at Mason, the officers' names being Lemburg, Durst and White, White being vice-president, and one of the other named parties being cashier and one assistant cashier. Appellant and Baxter were seeking a loan of one thousand dollars, and represented to the officers of the bank that he was the owner of four sections of land located near the town of Voca in McCullough County; that said land was unincumbered; that he had a contract with one Martin to "put up" for him a bunch of cattle; that he desired to use the money for the purpose of filling his contract; he further

represented that R. L. Baxter was the owner of four sections of land located near the town of Voca, and that this land was also unincumbered; he further represented that he desired to borrow the money for a period of ten days, and that he and Baxter would execute a note due in thirty days payable to the bank. On these representations and the further representation as to the solvency of himself and Baxter above their homestead exemptions to satisfy the debt or refund the thousand dollars, the bank let them have the money. Then followed the allegation of the falsity of the statements, etc. White testified in substance as charged in the indictment, and in addition that the parties stated they would secure the signature of one Stiles as surety, also a resident of McCullough County. They took the note away with them, Stiles signed it, and it was returned to the bank; whereupon the bank placed to Baxter's credit one thousand dollars less one month's interest, which was a part of the contract. This money was to be checked out over Baxter's name. Several checks were introduced in evidence signed by Baxter per appellant. The proof shows that the parties had no land at the time, except Baxter owned 160 acres which he occupied as a homestead, for which he had not paid. This perhaps is a sufficient statement of the case. A similar indictment was held good in Baxter's case, and we are of opinion that this indictment is sufficient.

Appellant contends that neither he nor Baxter received any money of any sort, and that while the money was placed to the credit of Baxter, it created only the relation of creditor and debtor as between Baxter and the bank, and, therefore, no money was in fact obtained. We have held in prior cases this proposition is not sound, therefore we deem it unnecessary to review that question.

Nor is the contention of appellant that the court should not have charged in regard to principals correct. Under the facts the parties were acting together and both present. Medders knew the condition of things and represented himself to be a party to the contract for the delivery of the cattle, and this money was sought to relieve a debt on the cattle in order that they might consummate the trade with Martin. They were both present and appellant did some of the talking, made some of the representations and was acting with Baxter. White is corroborated by testimony of other bank officers. This made appellant as much a party to the transaction as it did Baxter. Other facts in the record show that appellant had no such land as he represented to have and he knew that Baxter did not own such land. The charge in regard to principals was not error.

Appellant depended largely upon the theory that as the indictment charged him with obtaining current money of the United States, that the case was not made out; in fact, that there was a variance

between the allegation in the indictment and the evidence introduced because of the fact that no money really passed between the parties, and the passing to Baxter's credit the one thousand dollars less the one month's interest was not sufficient to show a reception of money. As stated, we do not think there is any merit in this contention. It was as much a money transaction by passing the money to the credit of Baxter as if he in fact had received the money and placed it back in the bank, or had received the money and carried it away. It changed the possession and title to the money from the bank to Baxter. The court, therefore, did not err in refusing appellant's requested instruction covering this contention.

After a careful review of the entire record, we are of opinion that it presents no such error as requires a reversal of the judgment, which is therefore affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.
#### November 11, 1908.

DAVIDSON, Presiding Judge.—On a previous day of the present term the judgment in this case was affirmed. Appellant files his motion for rehearing setting up several grounds.

The first ground alleges that the court in the opinion erred "in finding as a fact that appellant represented to the bank that he had a contract with one Martin to 'put up' some cattle, when the record discloses the fact that one R. L. Baxter, who represented that he, not Medders, had this contract to 'put up' some cattle."

Another ground alleges that the court is in error "when it makes the following deductions from the record: "Under the facts the parties were acting together and both present. Medders knew the condition of things and represented himself to be a party to the contract for the delivery of the cattle, and this money was sought to relieve a debt on the cattle in order that they might consummate the trade with Martin. They were both present and appellant did some of the talking, made some of the representations and was acting with Baxter." This is a quotation from the original opinion. Appellant says in his motion: "Appellant fails to find anywhere in the record that he represented to the bank that he had a contract with Martin or anyone else to put up cattle for him or them." He further states in this ground of the motion, as follows: "Neither can appellant find from the record sufficient evidence to support the court in concluding that appellant knew all about the contract and intentions of Baxter with the bank." We have in the light of the contention of appellant in his motion for rehearing reviewed the facts and as appellant and the court do not understand this record alike, we have concluded to make quotations from the testimony. The witness White testified that he was acquainted with the parties and had business transactions with them on the 6th of May,

1905, "in which they were both present. We loaned them $1,000. I think that is the date. Prior to that time we loaned them the $500. On the 6th of May we made this $1,000 loan. The negotiations were carried on in the office of the German-American National Bank. F. W. Lemburg, H. C. Durst and myself were present for the bank and R. L. Baxter and L. Medders were present when the loan was made. As to the representations that were made by Medders and Baxter: I had just come down from dinner. Mr. Lemburg and Durst and Mr. Baxter and Mr. Medders were inside of the railing of the bank at the desk talking. I walked in and Mr. Lemburg says to me, 'Mr. Baxter and Mr. Medders want to borrow a thousand dollars for ten days.' I says, 'Have we got the money to spare?' He says, Yes.' I says to them, 'What security have you got or how are you fellows fixed?' They both spoke up. Mr. Baxter first says, 'I own four sections of land out near the town of Voca in McCulloch County and unincumbered.' Mr. Medders says, 'I own four sections of land out there in McCulloch County, near the town of Voca.' They said they would put Jim Stiles' name on the note. They said the land was unincumbered. They said it was in their own names. They didn't owe anything on it and it was unincumbered. I said, in that case we can let you have the money. They said we only want the money for ten days. I told them we would not make a note for less than thirty days. We made a note for thirty days and took the discount out. They carried the note off to get Stiles to sign it. In two or three or four days the note came back with Stiles name on it. Both Baxter and Medders said they would give a note—they said we will give our note. I told them they must sign it not as a firm but to sign it as R. L. Baxter and L. Medders. We would not take a firm's name on a note. They said they had a contract with one Martin, I understood John Martin, I don't remember as far as that is concerned, but it was one Martin, for five hundred two-year-old steers and they had the steers all paid for with the exception of about a thousand dollars. As soon as they got this thousand dollars they were to deliver the steers. And as soon as they got the money they would straighten up all their notes. Mr. Baxter and Mr. Medders said they were both interested in the Martin contract and in paying for the cattle. Both parties were present. The note was signed by Baxter and Medders in the bank. At that time they owed the bank a note for $500, I can't remember the date of it and their account stood a little overdrawn. I think the note was returned about the 10th of May—about the tenth— the ninth or tenth. It probably came in on the night of the ninth or the night of the tenth. R. L. Baxter was given credit for it. The account was kept with Baxter by their own consent and Baxter was to sign the checks. It was agreed there at that time that the

money was to be deposited there in the name of R. L. Baxter and he was to give the checks, to check it out." This is the testimony of J. W. White. After a careful review of this testimony and the statements contained in the original opinion, which has been criticised by appellant in his motion for rehearing, we are still of the opinion that the criticised statements are correct. White's testimony was credited by the jury and this court was justified in finding that appellant represented himself as being a party to the Martin contract with Baxter and was borrowing the money to relieve the indebtedness hanging over the five hundred head of cattle. If Baxter was guilty of a fraud upon the bank under the circumstances above detailed, the conclusion can not be escaped that appellant was equally guilty. White says he made the representation, held himself out as interested in getting the money, in the cattle contract, and in paying off the indebtedness hanging over the cattle. Whatever fraud may have been perpetrated upon the bank by Baxter, was done with appellant's knowledge, consent and active participation. He was present, aiding and assisting Baxter in getting the money, making the representations stated by White and under these representations, he was equally interested in obtaining the money to be used for the purpose stated by him at the time. But even if he was not interested to a dollar's extent he knew the false representations that Baxter was making and by joining and assisting him as he did in getting the money, he became a principal and was equally responsible with Baxter. He was present, aiding and encouraging Baxter in perpetrating fraud, knowing it was a fraud, knowing the representations were false and this made him a principal with Baxter in the swindle, whether he had a dollar's interest in it or not, or whether he represented to the bank that he had any interest in it. Nor is there any merit in appellant's further contention in his motion that the account was carried on in the name of Baxter on the bank's books. White testified that it was the understanding and agreement at the time that the money should be placed to the credit of Baxter.

We are still of the opinion that the testimony we have quoted justifies the conclusion and statements made in the original opinion. We are, therefore, of opinion that the motion should be overruled and it is accordingly so ordered.

*Overruled.*