320 So.2d 760

In re Ruby Lee **LATHAM**

v.

**STATE** of Alabama (two cases).

Ex parte Ruby Lee Latham.

Ex parte **STATE** of Alabama ex rel. **ATTORNEY GENERAL.**

SC 1228, SC 1236.

Supreme Court of Alabama.

Sept. 18, 1975.

Rehearings Denied Oct. 2, 1975.

William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for the State.

James M. Fullan, Jr., Birmingham, in opposition to the State's petition for certiorari and for the defendant, in support of her petition for certiorari.

MADDOX, Justice.

Both the State and the defendant sought review, by certiorari, of the decision of the Court of Criminal Appeals, 55 Ala.App. ——, 320 So.2d 747. We granted both petitions. The State contends that the court erred in deciding that it did not prove larceny. The defendant, on the other hand, contends that the court's decision conflicts with *O'Brien v. State,* 238 Ala. 189, 191 So. 391 (1939), in that Mrs. Latham was charged with obtaining $489.90 by false pretenses and the proof showed that the money obtained by the defendant was a state warrant. We reject not only the argument by the State but also that of the defendant and affirm the Court of Criminal Appeals.

■ As to the State's contention that the charge of *larceny* was proved by showing that the defendant got the money by a state warrant, we affirm without further opinion.

■ As to defendant's contention that the charge of obtaining $489.90 by false pretenses was not proved by showing that the defendant got the money from negotiating a state warrant, we also affirm.

The Court of Criminal Appeals followed *Simmons v. State,* 242 Ala. 105, 4 So.2d 905 (1941), and held that there was no variance between the allegations and proof on the false pretense charge. We agree. In *Simmons,* this Court stated:

"The opinion of the Court of Appeals discloses that defendant (petitioner here), obtained from the bank, by means of false pretenses, a deposit slip for $500 on October 3rd and checked out the said $500 the next day.

"Though the money was paid to him or to someone for his benefit, the day following the deposit, it is strenuously insisted there was a fatal variance between the allegation of the receipt of money and the proof of said deposit, and that by reason of such variance the affirmative charge was due in his favor.

"The ruling of the Court of Appeals in denial of this contention is supported by the case of *Pirkle v. State,* 24 Ala. App. 19, 129 So. 707, a decision by that Court not here reviewed. We think it likewise supported by the weight of authority elsewhere. 25 C.J. 641. Illustrative in support is *Medders v. State,* 54 Tex.Cr.R. 494, 113 S.W. 270, and illustrative to the contrary is *Commonwealth v. Howe,* 132 Mass. 250. But more to the point, the finding is supported by common sense and sound reasoning.

"True in a strict legal sense the relation of creditor and debtor exists between the depositor and the bank with actual legal title to the money in the bank. *First National Bank v. Williams,* 206 Ala. 394, 90 So. 430. But in practical effect the money is so on deposit for the immediate use of the depositor, and the well nigh universal expression 'my money is on deposit' is to be heard on every hand. And as a practical proposition the deposit slip is the mere instrumentality through which the depositor acquires the use of the money.

"Indeed in *City National Bank v. Burns,* 68 Ala. 267, 44 Am.Rep. 138, the holding was that the act of the bank in crediting a depositor with the amount of a check drawn upon it by another customer, is 'equivalent to a payment in money'.

"It would be carrying technicality to a most regrettable extreme to hold that the proof of the mere instrumentality of obtaining the money constitutes a variance with the charge of obtaining the money itself, when the same evidence discloses the fact that the money was so obtained. Counsel for defendant lays stress upon two decisions of this Court. *Pollock v. State*, 210 Ala. 69, 97 So. 240 and *O'Brien v. State*, 238 Ala. 189, 191 So. 391.

"In the Pollock case the money was obtained upon a promissory note, which may be said to present a matter of difference. But even in that case the Court was sharply divided, the writer with Mr. Justice Somerville, concurring in the dissenting opinion of Mr. Justice Thomas. Perhaps the O'Brien case is more nearly analogous, as it concerned the issuance of a check as the instrumentality through which the money was obtained.

"Mr. Justice Thomas and the writer acquiesced in the O'Brien case upon the theory the matter had been set at rest by the previous decisions of the Court. As for the writer he has lived to regret the acquiescence, as, to his mind, there was presented a good opportunity for the Court to step in line with the weight of authority and more in accord with plain common sense.

"But here we are dealing with a deposit slip and the cases relied upon dealt with no such instrumentality. There is no occasion, for a definite announcement, therefore, as to either the Pollock or O'Brien cases.

"Courts are established for practical purposes and should function with a practical end in view. One of the outstanding values of a bank is the matter of safety to the depositor of his money, and, of course, the 'deposit slip' but evidences the fact, for all practical purposes, that the depositor has so much funds in the bank subject to immediate use.

"It was, in the instant case, merely the instrumentality through which the defendant received his money, and to hold a fatal variance in such a case would run counter to common sense and tend to frustrate the practical end, for the accomplishment of which courts were established." [Emphasis added.]

The defendant here, as did the defendant in *Simmons*, lays stress upon *O'Brien v. State*, 238 Ala. 189, 191 So. 391 (1939). While *O'Brien* has not been overturned, it has been materially weakened as an authoritative case. As a matter of fact, Chief Justice Gardner, in *Simmons*, notes that he and Mr. Justice Thomas had acquiesced in the *O'Brien* case because they thought the matter had been laid to rest by previous decisions. It is apparent from a consideration of what was said in *Simmons*, that at least five members of this Court, as then constituted, thought *O'Brien* was not "in line with the weight of authority" and was not "in accord with plain common sense."

Even though this case involves a *warrant* and not a *check*, as was the case in *O'Brien*, we think that would be a distinction without a difference. Consequently, we refuse to follow *O'Brien*. The better rule is obviously stated in *Simmons*. As was said in *Simmons*, it would be carrying technicality to a most regrettable extreme to hold that the proof of the mere instrumentality of obtaining the money constitutes a variance with the charge of obtaining the money itself, when the same evidence discloses the fact that the money was so obtained.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, FAULKNER, JONES and SHORES, JJ., concur.

ALMON and EMBRY, JJ., not sitting.