Appellant was convicted under an indictment charging him with the embezzlement of "money and checks, or money or checks to the amount of about $5,720 and of that value." He was sentenced to three years imprisonment in the penitentiary.
His principal contention on appeal is that the evidence is not sufficient to support the verdict and that the court should have granted defendant's motion to exclude the State's evidence at the conclusion of the State's case.
The transcript presents a tangled mass of testimony, so confusing that when the State first rested and defendant moved to exclude the testimony, the trial court recognized the impenetrable condition of the thicket and allowed the State to reopen its case and clarify some of the evidence that should have been clear when introduced. One particular item was as to the name of the legal entity that in the indictment is averred to have been the correlate of defendant as its "officer, agent, clerk or employee." Said correlated is named in the indictment as "C M Chassis Products, Inc., a Corporation," but until the case was reopened, there was hopeless confusion as to the name. After the case was reopened, it was explained by competent testimony that the particular legal entity had changed its previous name, even though such previous name continued to be used on its printed checks, and at the time of the alleged embezzlement the correct name was as stated in the indictment.
Notwithstanding the confusing state of the evidence, we are able by laborious reading to determine that there was substantial testimony to the effect that on October 23, 1975, defendant drew a check on a bank deposit of "C M Chassis Products, Inc., a Corporation," the employer of defendant, payable to defendant, which defendant deposited in a bank to his credit and used the proceeds thereof, the check being in the sum of $5,720. According to the evidence, appellant was the "plant controller" of C M Chassis Products, who, with others, had authority to issue checks and sign them on behalf of such company. According to the evidence, the money, the said sum of $5,720, was not used in company business; it was appropriated by defendant to his own personal use. There was some evidence that the company would at times lend money to its employees, but, as stated by one of the witnesses, whenever an employee obtained money from the company, whenever anyone authorized to do so issued and signed a check for the company, a "back-up" was required, that is, a bookkeeping entry showing justification for the transfer of funds from the bank account of the company was necessary. Also according to the evidence, defendant, when confronted by other employees of the company with the fact of his withdrawal of the money, admitted that he did so and that he used the funds for his personal benefit. All of this testimony was presented prior to the closing of the case by the State after it had been allowed to reopen. After the State rested, defendant took the stand and admitted that he had thus withdrawn money from the company and deposited it to his account and appropriated it to his personal use. In attempting to justify his conduct, he testified that he considered he had authority from the company to borrow money as he needed it and that he intended to reimburse the company for the money he had converted to his own use.
We have no difficulty in concluding that the evidence, even before defendant himself testified, was sufficient basis for a finding that defendant converted to his own use the sum of $5,720 with the felonious or fraudulent intent necessary to constitute embezzlement under Code 1940, Tit. 14, § 126, for which he was indicted and tried. *Page 559 
Appellant ingenuously raises the age-old question, ofttimes baffling, whether particular felonious or fraudulent conduct as to personal property constitutes embezzlement on the one hand or some other crime on the other, or perhaps no crime at all. Relying upon Gary v. State, 160 Ala. 107, 49 So. 678, appellant urges that in the issuance and signing of the particular check in this case for the benefit of defendant, the crime, if any, was forgery or some other crime other than embezzlement, as was held in Gray as to one of the checks considered in that case which defendant had issued and signed without authority in the name of another. However, unlike the facts in Gray, appellant in the case now before us had authority from his employer to issue and sign checks on his employer's bank account. There was no forgery. We note that what was held in Gray as to the particular point has been delimited as follows:
 "Petitioner contends that a person cannot embezzle a check in which he is the specified payee and cites Martin v. State, 37 Ala. App. 197, 65 So.2d 540. This case and Gray v. State, 160 Ala. 107, 49 So. 678, held only that checks being payable to accused and cashed by him are not sufficient facts to constitute embezzlement of checks. The cases did not indicate that it was impossible to embezzle such checks . . ." (Emphasis supplied) Christison v. State, 273 Ala. 564, 566, 142 So.2d 676, 678, aff'g, 41 Ala. App. 192, 142 So.2d 666.
We need not be concerned whether there was an embezzlement of "checks" as charged disjunctively in the indictment. The crime was committed if there was an embezzlement of money, as charged in the disjunctive also.
A more controversial question is whether the money, deposited in a bank and transferred by defendant to his use through the usual bank procedure and channels, is to be considered as having been in his possession by virtue of his office, agency, or employment as alleged in the indictment pursuant to Tit. 14, § 126 of the Code. The opinion in Garner v. State, 229 Ala. 600,158 So. 546, cert. den., 26 Ala. App. 246, 158 So. 543, is not decisive of the question, for therein was considered a different Code Section (now Tit. 14, § 127) involving embezzlement of public funds not requiring possession by defendant. Such being true, the Supreme Court of Alabama did not find it necessary to pass upon the question whether, under a statute requiring possession, embezzlement could occur if the funds were not in defendant's "physical possession." Such question was decided in State v. Doucet, 204 La. 79,14 So.2d 917. There, public funds were involved and the statute, like the Alabama statute on the subject, did not expressly require possession by the alleged embezzler; but the indictment charged that he had possession, and the Supreme Court of Louisiana held that the "Sheriff's Salary Fund," deposited with a bank, was in the legal possession of the sheriff, and he could be prosecuted for embezzlement therefrom.
 "Money, the disbursement of which is entrusted to the person, is, for the purpose of the statute punishing embezzlement, in his possession, even though the actual custody and control of the money is in another.
 "Although there is authority to the contrary, it has been held that an accused who draws checks payable to his own creditor against his principal's or employer's bank account had sufficient possession of the funds to support a conviction for embezzlement. The courts which take this view base it upon the fact that the accused has control, as in trust, of his employer's or principal's funds while they are mixed with the bank's general fund." 26 Am.Jur.2d, Embezzlement, § 18.
The check drawn on the bank for the money which the indictment charges the defendant embezzled was not made payable to a creditor of defendant. It was made payable to defendant himself and deposited by defendant to defendant's personal account in a bank. Thereafter he drew on said funds for his own personal use. As noted in the quotation from 26 Am.Jur.2d,Embezzlement § 18, the cleavage of authority is not as to drawing on another's *Page 560 
account by checks payable to one's self, but only as to checks payable to creditors of the drawer. Even as to the latter, the majority view is that the funds so involved and handled are subject to embezzlement. Anno.: 88 A.L.R.2d 688. The leading case supporting the minority view is State v. Tauscher, 227 Or. 1, 360 P.2d 764, 88 A.L.R.2d 674. The conclusion reached inTauscher was because of the particular language of the embezzlement statute under which defendant was tried. The particular embezzlement statute was to the effect that "only that property which is the subject of larceny can be the subject of embezzlement." The court held that as to larceny, as we held in Latham v. State, 56 Ala. App. 234, 320 So.2d 747, aff., 294 Ala. 685, 320 So.2d 760, and Latham v. State,57 Ala. App. 107, 326 So.2d 299, property that cannot be manucaptured, which is not in such form that it can be trespassed upon or to, cannot be the subject of larceny. Not so as to the crime of embezzlement, which is not afflicted with the restrictions of trespass as to the physical form of property or the methods by which an unlawful invasion of another's interest therein can be accomplished.
Many of the cases supporting the majority view are cited in the following from State v. Moreno, 156 Conn. 233,240 A.2d 871:
 "The defendant also urges that, since funds deposited in a commercial checking account create a creditor-debtor relationship between the bank and the depositor, such funds could not be moneys in the care and custody of the defendant. `Although there is authority to the contrary, it has been held that an accused who draws checks payable to his own creditor [or to third persons] against his principal's or employer's bank account has sufficient possession of the funds to support a conviction for embezzlement. The courts which take this view base it upon the fact that the accused has control, as in trust, of his employer's or principal's funds while they are mixed with the bank's general fund.' 26 Am.Jur.2d 569, Embezzlement, § 18; see Commonwealth v. Shepard, 83 Mass. (1 Allen) 575, 586; State v. Colson, 325 Mo. 510, 516, 30 S.W.2d 59; Territory v. Hale, 13 N.M. 181, 189, 81 P. 583. `Embezzlement convictions for drawing checks payable to the accused's own creditor [or to third persons] against the principal's or employer's bank account have been upheld in a majority of cases, notwithstanding the question of the accused's possession of the embezzled funds.' Note, 88 A.L.R.2d 688, 689; see People v. Schmidt, 147 Cal.App.2d 222, 229, 305 P.2d 215; State v. Lockie, 43 Idaho 580, 587, 253 P. 618; State v. Johnson, 109 Kan. 239, 241, 199 P. 104; State v. Bussa, 176 La. 87, 101, 145 So. 276; Simmons v. State, 165 Miss. 732, 743, 141 So. 288; State v. Lomax, 322 Mo. 86, 92, 14 S.W.2d 436; State v. Krug, 12 Wn. 288, 308, 41 P. 126."
The majority view as to funds transferred or checks payable to the drawer's creditor would apply a fortiori to checks payable to the drawee himself. We are persuaded that it should be so applied in this case.
The court was not in error in refusing to grant defendant's motion to exclude the evidence either at the close of the State's case or at the close of the evidence in its entirety.
Appellant complains further of the admission in evidence of other crimes, the issuance by defendant of other checks on his employer's bank account payable to defendant for his own personal use. In some of these instances, there was no objection by defendant, and in some of them the evidence was offered by defendant. At any rate, the evidence was admissible for the purpose of showing a fraudulent intent. Murphy v.State, 52 Ala. App. 490, 294 So.2d 457, cert. den., 292 Ala. 743, 294 So.2d 462; Lambert v. State, 48 Ala. App. 600,266 So.2d 812; Esdale v. State, 37 Ala. App. 48, 68 So.2d 512.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby *Page 561 
adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All Judges concur.